IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TOBY LAWSHAWN OLIVER                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 4:09cv169- FKB

BILLY SOLLIE, ET AL.                                                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

    The Court held an omnibus hearing in this matter, at which time it conferred with the plaintiff and counsel for the defendants in this suit founded upon 42 U.S.C. § 1983. At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference. 28 U.S.C. § 636(c), Fed. R. Civ. P. 73. Oliver is proceeding in this matter *in forma pauperis*. 28 U.S.C. § 1915(e). Having considered the Plaintiff's claims as set forth in his Complaint and in his Omnibus Hearing[1] testimony, the Court finds that Plaintiff's inadequate medical care claim should be dismissed, and that his conditions of confinement claim should go forward as there is insufficient evidence at this time to evaluate it.

I. Plaintiff's Claims

    Plaintiff sets forth two separate constitutional claims against the Defendants arising from

---

[1] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

his time of incarceration between March 2009 and November 12, 2009, at the Lauderdale County Detention Facility ("LCDF"), located in Meridian, Mississippi. Complaint at 4, Docket No. 1 at 7. Plaintiff alleges that the conditions at the LCDF caused him to contract a staph infection in his arm, and that other prisoners also contracted staph infection at the facility. Furthermore, he alleges that the Defendants failed to provide him adequate medical treatment for the staph infection. Plaintiff has named as Defendants Lauderdale County; the Sheriff of Lauderdale County, Billie Sollie; one Major Robinson; and Southern Health Partners. It is unclear whether he was a pretrial detainee or convicted prisoner during this time. See Complaint at 3.

Turning to his complaint, other than an allegation that four inmates caught staph infection while incarcerated at LCDF, the complaint is silent regarding descriptions of or allegations about the living conditions at LCDF. Instead, Oliver alleges that he and three other inmates contracted staph infection from Zone C7, cell numbers 233 and 229, between March and November 2009. His complaint appears to insinuate that because he and others caught staph infection while at the jail, the living conditions at LCDF necessarily violated his constitutional rights.

In a Response to the Court located at Docket no. 10, the Plaintiff elaborated further upon these allegations. In that filing, the Plaintiff alleged that all three Defendants had knowledge that inmates had caught staph infection while housed in his unit and that he had caught staph while housed in cell 229. Furthermore, the Plaintiff alleged that because the Defendants failed to clean or sanitize cells between their occupation by different inmates, and because they failed to give the inmates cleaning materials, the Defendants violated his constitutional right to be free from cruel and unusual punishment. Docket No. 10 at p. 2. He characterized this failure by all three Defendants to provide cleaning materials, to clean the cells, and to take some action to stop the

staph outbreak as a custom that violated his constitutional right to be free from cruel and unusual punishment. Id.

As to his inadequate medical care claim, in his complaint Oliver alleges that three weeks after he first moved into cell number 233[2] with inmate Jonah Adams, boils appeared under his armpit. Docket No. 1 at p. 4. At that time, he filled out a medical request form and went to see a nurse, who told him that it was a swollen gland. He alleges that about two weeks later, a boil appeared on the back of his arm. At that time, the medical staff put him on ibuprofen and antibiotics. Despite this treatment, his armed swelled to about three times its normal size for about one and one-half weeks. He submitted another medical request and was seen by a doctor, who prescribed Lortab for pain, lanced his arm, and put him back on antibiotics. Oliver alleges that this treatment still did not help his arm. On October 25, 2009, after his mother complained to LCDF officials about his condition, LCDF personnel took him to the emergency room at Rush Hospital in Meridian, Mississippi, where he was admitted for surgery. At Rush Hospital, the doctors diagnosed Oliver with staph infection and performed surgery on his arm and armpit that enabled the infection to drain from those areas. Docket No. 1 at 5. Oliver remained in the hospital for three days[3], after which he was released to the jail for further treatment.

Upon his return to LCDF, Oliver alleges in his complaint that the medical staff did not follow doctor's orders for treatment of his surgical wounds. He alleges that the surgeon had told him that he would remain on Lortab for pain until his wounds healed. Instead, LCDF gave him

---

[2] His complaint fails to specify a date on which he moved into Cell 233.

[3] Plaintiff's Response to Court Order, Docket No. 10 at p. 2.

something for pain for only two days.  Further, Oliver asserts that the surgeon had directed that the dressing on his incisions be changed twice a day.  Oliver alleges that when he returned to LCDF, the nurses did not wrap his wounds twice a day.  Furthermore, LCDF returned him to the same cell where he alleges he caught the staph infection.  Oliver asserts that, at the time the complaint was filed on December 3, 2009, he still could not use his arm properly, that he was in pain, and that he would have to live with the infection the rest of his life. Docket No. 1 at p. 6.

At the Omnibus Hearing, the Plaintiff was given an opportunity to elaborate upon his claims. As to his claim regarding the conditions at the jail, Oliver's testimony was vague.  When asked what the jail should have done to prevent the infection, he stated that LCDF should clean the cells, and he alleged that the facility simply failed to do this.  He alleged that it was the inmate's responsibility to clean the cells at LCDF.  Oliver testified that upon his return to LCDF, the facility gave him cleaning materials for his cell.

Most of his testimony at the Omnibus Hearing reiterated his allegations in the complaint regarding inadequate medical treatment.  In sum, Oliver admitted that he was treated with pain relievers and antibiotics by nurses and doctors at LCDF from his first complaint up until the time he was taken to Rush Hospital by LCDF personnel. In particular, he stated that upon his initial complaint to medical personnel, the nurses thought his condition was caused by a spider bite.  At that point, he was already on antibiotics for a tooth infection, so the nurses continued to give him antibiotics.  After two weeks of treatment, he saw a doctor who gave him more antibiotics and pain medications. He indicated that one month passed from the time he first noticed symptoms to the time he had surgery.  He admitted that he had fully recovered within a week of the surgery, and, although he had scars on his arm from the surgery, his arm was back to normal at the time of

the Omnibus Hearing.

During the Omnibus Hearing, the Plaintiff stated that he had sued Defendant Sheriff Sollie because he was over LCDF.  He further stated that he had sued Major Robinson because he saw her every day, and she was the boss of the LCDF.  Finally, Oliver testified that he sued Southern Health Partners, the health care provider to LCDF, because they didn't provide him with quick enough medical treatment.

## II. Discussion

Because the Plaintiff is proceeding in this action *in forma pauperis* pursuant to 28 U.S.C. § 1915, his claims are subject to dismissal if the Court determines that the action or appeal is "frivolous or malicious," or " fails to state a claim on which relief may be granted."  Id. Furthermore, although the defendants have raised the defenses of qualified and absolute immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis."  Wells v. Bonner, 45 F.3d 90, 93 (5th Cir. 1995)(citing Siegert v. Gilley, 500 U.S. 226, 231-33 (1991)).  In other words, if the court finds that the plaintiff's claims are not cognizable under § 1983, it need not reach the question whether the defendants are entitled to immunity.  Id.  The Court will examine the Plaintiff's claims, in turn.

Under § 1983, claims against the Defendants in their official capacities are the equivalent of suit against the governmental entity as a defendant.  Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Kentucky v. Graham, 473 U.S. 159 (1985).  Thus, plaintiff's official capacity claims are, in essence, actions against Lauderdale County, Mississippi.  Lauderdale County is not liable

under 42 U.S.C. § 1983 for acts which allegedly violated plaintiff's constitutional rights unless the harmful act resulted from a policy, custom or practice which evinces objective deliberate indifference to the plaintiff's constitutional rights. Grabowski v. Jackson County Public Defender's Office, 79 F.3d 478, 479 (5th Cir. 1996)(en banc) (citing Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996)(en banc)).

As to the Plaintiff's claims against the Defendants in their individual capacities, "the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." Jolly v. Klein, 923 F.Supp. 931, 943 (S.D. Tex. 1996). Supervisory officials, moreover, "cannot be held liable for the actions of subordinates under any theory of vicarious liability." Id. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992). In other words, in a § 1983 case, liability for an employee's actions may not be imputed to employers under a theory of respondeat superior.

### A. Plaintiff's Claim Regarding Staph Infection and Conditions

With broad strokes and invoking specific legal language, see Response at Document No. 10, the Plaintiff has alleged a double-faceted claim against the Defendants based upon his staph infection. In other words, when one analyzes the Plaintiff's allegations regarding staph outbreak and conditions at LCDF, the Plaintiff's claim on this issue breaks down into two separate components. First, Plaintiff makes claims that the Defendants violated his constitutional rights because they were aware of a staph outbreak in the Plaintiff's housing unit and, in particular, in

his cell, and did nothing to stop it. Second, the Plaintiff claims that the staph outbreak was a result of the Defendants' custom or practice that failed to sanitize the cells, failed to eradicate the staph bacteria, and failed to quarantine the infected living quarters, thus causing him to become infected with staph. The court finds that, based upon the Plaintiff's complaint and testimony, there is insufficient evidence to evaluate this claim at this time. Accordingly, the Court hereby sets a dispositive motion filing date of February 4, 2011, so that this issue may be briefed by the parties.

### B. Inadequate Medical Care Claim

Plaintiff next makes a general claim of inadequate medical care against the Defendants regarding the manner in which they diagnosed and treated his staph infection. As set forth in detail above, the Plaintiff admits that he saw medical personnel and was treated by them for about a month, albeit not to his liking, from the time he first noticed the boils under his arms, through surgery, and to the time he returned to the LCDF post-surgery. Based upon his allegations, it does not appear that he is making an inadequate medical care claim against the Defendants in their official capacities. Rather, he makes this inadequate medical care claim against the Defendants in their individual capacities, alleging that his injuries are the result of episodic acts or omissions by the Defendants.

The standard for analyzing the Plaintiff's denial of medical care claim is well established. The Fifth Circuit has adopted the same standard for evaluating a jail official's episodic acts or omissions for both pretrial detainees and convicted prisoners. <u>Hare v. City of Corinth</u>, 74 F.3d

633, 643 (5th Cir. 1996)(en banc)[4]. The Court is required to employ a standard of subjective deliberate indifference as the measure of culpability for such episodic acts or omissions, which include allegations of inadequate medical treatment. Id.  In other words, "the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." Id. at 645. Thus, in order to prevail on a constitutional claim for denial of adequate medical care, the Plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care. . . ." Estelle v. Gamble, 429 U.S. 97, 104-105; Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Nevertheless, the Court is mindful that "a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under § 1983 only if there were exceptional circumstances." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  Although he may disagree with the treatment he has received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992).

Turning to the Plaintiff's claim against Sheriff Sollie, the undersigned finds that the Plaintiff's claims against Sollie sound in the theory of *respondeat superior*.  At the Omnibus

---

[4] The Court notes that it appears that the Plaintiff was both a pretrial detainee and a convicted prisoner during the time when he alleges his constitutional rights were violated.

hearing, the Plaintiff stated that he had sued Sollie because he was over the facility. He did not make specific allegations of wrongdoing against Sollie, nor did he allege personal involvement by Sollie in a constitutional deprivation. "Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions." Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992). Accordingly, this claim against Sollie should be dismissed.

As to his claims against Robinson and Southern Health Partners, Plaintiff's alleged inadequacy of medical treatment does not amount to a federal claim. Rather, Oliver is simply displeased with the result of the medical personnel. Indeed, it appears that the Plaintiff was treated with antibiotics and pain medication from his first visit with medical personnel. By the Plaintiff's own admission, while at the facility and prior to his surgery, he saw nurses several times and saw a doctor once, all who prescribed pain medication and antibiotics for him. The facility, furthermore, took him to the hospital emergency room for treatment and allowed him to be admitted to the hospital for surgery. By his own admission, the Plaintiff's condition was much better within a week of the surgery. Further, although he complains that post-surgery the facility nurses did not change the dressings as often as ordered by the doctor, and the facility did not give him as much pain medication as he desired, he admitted at the Omnibus hearing that his arm was back to normal. Although he may disagree with the choice of treatment he received for his medical conditions, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992); see also Gibbs v. Grimmette, 254 F.3d 545 (5th Cir. 2001). Even though Oliver's treatment may not have been as quick as he desired, this course of treatment did not demonstrate deliberate

indifference to his medical needs. See Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (plaintiff must show he suffered substantial harm resulting from the delay). Further, his disagreement with a nurse's diagnosis and treatment, rather than a doctor's cannot rise to the level of a constitutional claim. See Wesson v. Oglesby, 910 F.2d 278, 283 (5th Cir. 1990). Prison officials are entitled to rely on qualified medical provider's opinions in determining what medical care is appropriate. Tucker v. Shepard, 2008 WL 341653 (S.D. Miss. Feb. 5, 2008). Finally, mistakes in treatment cannot be the basis for a constitutional claim because allegations of negligence cannot be pursued under 42 U.S.C. section 1983. Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995). Accordingly, the Defendants Robinson and Southern Health Partners are entitled to dismissal of this claim for its failure to rise to the level of a constitutional violation.

Finally, turning to his claim for inadequate medical care as it is alleged against Lauderdale County, the Court finds that it should be dismissed for a failure to rise to the level of a constitutional violation. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Monell requires that a constitutional injury by a government official must occur before a government entity may be held liable for establishing an unconstitutional custom or policy. Because the Court finds that the Plaintiff's claim of inadequate medical care does not rise to the level of a constitutional violation, the Plaintiff cannot maintain a claim of a custom or policy of inadequate medical care against Lauderdale County. Accordingly, this claim should be dismissed.

### III. Conclusion

For the reasons stated in this Memorandum Opinion and Order, the Court finds that the

Plaintiff's claim of denial of adequate medical treatment fails to rise to the level of a constitutional violation. Accordingly, this claim should be dismissed with prejudice as to all Defendants.

Turning to the remaining claims, the Court hereby sets a dispositive motion filing date of February 4, 2011, regarding the Plaintiff's claim alleging that the Defendants were aware of a staph outbreak and did nothing to stop it, as well as the claim that the staph outbreak and the Plaintiff's infection were a result of the Defendants' custom or practice that failed to sanitize the cells, failed to eradicate the staph bacteria, and failed to quarantine the infected living quarters.

SO ORDERED, this the 7th day of December, 2010.

/S/ F. Keith Ball_____
UNITED STATES MAGISTRATE JUDGE